**DENNIS CAIN MOTOR CO., a corporation, Plaintiff-Respondent,**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 11846.**

Missouri Court of Appeals,
Southern District,
Division Three.

March 4, 1981.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiff-respondent.

John R. Fowlkes, Caruthersville, Thomas W. Wagstaff, Floyd R. Finch, Jr., Robert E. Pinnell, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant-appellant.

PREWITT, Judge.

Plaintiff brought this action for declaratory judgment asking the circuit court to declare that defendant was obligated, under an insurance policy, to defend a lawsuit brought against plaintiff and to pay any judgment against plaintiff in that suit to the extent of the limits of liability stated in the policy. Defendant contended that its policy was not applicable to the claim stated in the lawsuit because the policy issued to plaintiff was not in effect at the time of the injuries causing the death described in that suit. Both parties moved for summary judgment and the court entered summary judgment in favor of plaintiff.

The suit referred to in plaintiff's declaratory judgment petition was brought by Roy E. Bone against General Motors Corporation and Dennis Cain Motor Co. The petition alleges that on June 9, 1977, Dennis Cain Motor Co. sold a new Cadillac automobile to Robert Louis Curtis and that on

January 18, 1979, Curtis was operating the automobile when, due to defect in the cruise control device, "the engine experienced an uncontrollable acceleration", causing it to strike and kill Leathe Mae Bone. Dennis Cain Motor Co. was alleged to have been negligent in selling the automobile in a defective condition when it had learned from General Motors that a malfunction in the cruise control was likely and it failed to inspect and road test the Cadillac to determine if the defect had been corrected and failed to warn Curtis of the defect.

Defendant issued a policy of insurance providing "Garage Liability" coverage for plaintiff from November 1, 1974, until the policy was cancelled on April 1, 1978. That policy provided in part:

"The company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of

G. BODILY INJURY or

H. PROPERTY DAMAGE

to which this insurance applies, caused by an OCCURRENCE and arising out of GARAGE OPERATIONS".

Bodily injury is defined in the policy as "BODILY INJURY, sickness or disease sustained by any person which occurs during the Coverage Part period, including death at any time resulting therefrom". Occurrence in the policy "means an accident, including continuous or repeated exposure to conditions, which results in BODILY INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED".

Defendant contends that as the "bodily injury" did not occur during the policy period, there is no coverage. Plaintiff contends that the policy provides coverage because the definition of bodily injury includes "death at any time resulting therefrom". Plaintiff contends that the plain language of this policy provides coverage or "at most" the policy is ambiguous and should be construed in favor of plaintiff.

The trial court appears to have ruled on the basis of affidavits filed in behalf of each party, one of which incorporated by attachment two pages of the insurance policy. No factual dispute was raised in the affidavits. The parties apparently are satisfied that the case can be resolved by resort to those documents. The question presented to us, as we ascertain from the affidavits and briefs, is if the portion of the definition of "bodily injury" referring to "including death at any time resulting therefrom" is limited to death as a result of bodily injury sustained during the coverage period. Plaintiff contends that this language provides coverage for death claims anytime thereafter if death is as a result of some incident or occurrence taking place at least in part during the policy period. Plaintiff would have "therefrom" relate only to bodily injury and not to the portion of the definition which requires bodily injury to occur during the coverage period. The parties apparently agree that "Coverage Part period" refers to the time that the policy was in effect, November 1, 1974, until April 1, 1978.

Plaintiff contended before the trial court in its affidavit in support of its motion for summary judgment:

"4—There is no genuine issue of fact between the parties and the only issue for determination by the Court is the mean of the policy definition of bodily injury defined in the said policy as follows: 'Bodily injury means bodily injury, sickness or disease sustained by any person which occurs during the coverage part, including death at any time resulting therefrom.'

5—The liability asserted against plaintiff in the said suit is for the death of Leathe Mae Bone arising out of alleged acts of negligence of plaintiff occurring during the policy period and said death is within the coverage of the policy insuring, ' * * * death at any time resulting therefrom.' "

The parties have not cited us to any case concerned with the phrase "including death at any time resulting therefrom" as it relates to the initial part of the definition of bodily injury, nor have we found such. Relying upon *Kissel v. Aetna Casualty & Sure-*

*ty Company*, 380 S.W.2d 497 (Mo.App.1964), plaintiff contends that as the suit against it claims that the malfunction and defects first became apparent in 1976, and continued through the sale of the Cadillac in June of 1977, that the "process" as mentioned in *Kissel* occurred within the policy period and "therefore the policy period covers the accident in question". We do not think *Kissel* is applicable here. The facts and the wording of the policy there are not similar to those present here.

Language similar to that defining bodily injury here, where death did not occur, has been held to limit an insurance policy to injuries arising during the policy period and to exclude from coverage injuries which occur subsequent to that period, even though the injuries may have been caused by acts done while the policy was in effect. *American Fidelity Fire Insurance Company v. Travelers Companies*, 93 Cal.App.3d 787, 155 Cal.Rptr. 900, 904 (Cal.App.1979); *Utica Mutual Insurance Co. v. Tuscaloosa Motor Co., Inc.*, 295 Ala. 309, 329 So.2d 82 (1976).

We accord the language of the policy its plain meaning. *Equity Mutual Insurance Company v. Insurance Company of North America*, 602 S.W.2d 904, 907 (Mo.App. 1980); *City of Palmyra v. Western Casualty and Surety Co.*, 477 S.W.2d 428, 432 (Mo. App.1972). Having done so, we do not see any ambiguity in the policy and are compelled to find that the policy only covers bodily injury, including that which causes death, if it occurs during the term of the policy. We think the provision "including death at any time resulting therefrom" relates to bodily injury, sickness or disease sustained during the coverage period and was included in the definition of bodily injury to include coverage for a death claim when the death occurs after the policy period but as a result of bodily injury occurring within the policy period. The word "therefrom" refers to bodily injury, sickness, or disease occurring during the policy period. Any other interpretation would be straining the plain wording of the policy.

The judgment is reversed and the cause remanded to the circuit court with directions to enter summary judgment in favor of defendant.

BILLINGS, P. J., and HOGAN and GREENE, JJ., concur.